**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| ABBVIE INC. (a Delaware corporation); ALLERGAN, INC. (a Delaware corporation); DURATA THERAPEUTICS, INC. (a Delaware corporation); ABBVIE PRODUCTS LLC (a Georgia limited liability company); PHARMACYCLICS LLC (a Delaware limited liability company); and ALLERGAN SALES, LLC (a Delaware limited liability company), <br><br> *Plaintiffs*, <br><br> v. <br><br> DREW H. WRIGLEY, in his official capacity as ATTORNEY GENERAL OF THE STATE OF NORTH DAKOTA, <br><br> and <br><br> TANYA L. SCHMIDT, in her official capacity as BOARD PRESIDENT OF THE NORTH DAKOTA BOARD OF PHARMACY; and CAROLYN BODELL, TYLER G. LANNOYE, SHANE R. WENDEL, KEVIN J. OBERLANDER, DIANE HALVORSON, and RON HORNER, in their official capacities as MEMBERS OF THE NORTH DAKOTA BOARD OF PHARMACY; and MARK J. HARDY, in his official capacity as EXECUTIVE DIRECTOR OF THE NORTH DAKOTA BOARD OF PHARMACY, <br><br> *Defendants*. | Case No. 1:25-cv-00081 |

**ABBVIE'S RESPONSE TO MARCH 10, 2026  ORDER FOR ADDITIONAL BRIEFING**

March 23, 2026

Plaintiffs AbbVie Inc., et al., ("AbbVie") submit this supplemental brief in response the Court's March 10, 2026 Order.  Doc. 66.  That order requested the parties address Article III standing and evidence specific to North Dakota.  *Id*.

*First*, AbbVie has Article III standing to litigate its constitutional claims because it "inten[ds] to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder."  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 160 (2014) (citation omitted).  Before the enactment of H.B. 1473, AbbVie's 340B contract-pharmacy policy placed conditions on the circumstances under which AbbVie would offer drugs for sale at the 340B price, which is significantly lower than the commercial price and sometimes as low as a penny.  One effect of this policy was to limit the sale of drugs at this discounted price.  After the enactment of H.B. 1473 AbbVie ceased enforcing its policy in North Dakota and consequentially saw an increase in discounted sales.  As set forth in the supplemental declaration of Edward Scheidler, attached hereto as Exhibit 1, AbbVie estimates that compliance with H.B. 1473 cost AbbVie $10 million in 2025 and will cost AbbVie another $35 million in 2026 in North Dakota.[1]  Forcing AbbVie to make these additional sales at confiscatory prices is classic Article III injury.

*Second*, evidence specific to North Dakota confirms that AbbVie is entitled to summary judgment.  The 340B program does not operate differently in North Dakota because of North Dakota regulations that require pharmacist ownership of pharmacies.  N.D. Cent. Code § 43-15-35.  As in other states, North Dakota covered entities sometimes contract with hundreds of

---

[1] As explained in Mr. Scheidler's declaration, this is lower than AbbVie's initial estimate because of changes in formulary coverage for one of AbbVie's drugs.  Ex. 1 (E. Scheidler Decl.) ¶ 10.  For standing the difference does not matter.  AbbVie has and will suffer substantial monetary harm if Defendants enforce H.B. 1473.

pharmacies, including some out of state.  This includes chain pharmacies that operate out of state and sell drugs (1) to patients who travel out of state or (2) by mail order to patients in North Dakota.

I.    **AbbVie Has Article III Standing To Challenge H.B. 1473.**

AbbVie has standing because H.B. 1473 has forced AbbVie to suspend its contract pharmacy policy in North Dakota.  Ex. 1 (E. Scheidler Decl.) ¶¶ 6-7.  The Article III standing requirements are: (1) "injury in fact," (2) "a sufficient causal connection between the injury and the conduct complained of," and (3) "a likelihood that the injury will be redressed by a favorable decision." *Driehaus*, 573 U.S. at 158 (citation modified).  In cases like this one, where the plaintiff sues to head off an enforcement action before the state has filed one, a future injury suffices "if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *See id.* (citation modified).  AbbVie's injuries fit that description, so its suit satisfies Article III, and the Court has jurisdiction to enjoin H.B. 1473.

AbbVie faces a substantial risk of an action under H.B. 1473 if it enforces its 340B contract pharmacy policy.  Under AbbVie's policy, AbbVie will only accept orders for one designated contract pharmacy per covered entity, if that covered entity lacks an in-house pharmacy.  *See* Doc. 28-18 ¶ 5.  If a covered entity designates a pharmacy, it must also supply limited "claims data"— that is, basic information about drug dispenses.  *Id.* ¶¶ 5, 24.  H.B. 1473 renders AbbVie's policy illegal because the law squarely prohibits manufacturers from denying, restricting, prohibiting, "or otherwise interfer[ing] with the acquisition of a drug by a contract pharmacy."  N.D. Cent. Code § 43-15.3-08(3)(b)(1).  Nor may manufacturers, under H.B. 1473, "[p]rohibit a contract pharmacy from dispensing a drug by denying access to the drug," *id.* § 43-15.3-08(3)(b)(2), or "[i]nterfere with the ability of a covered entity or contract pharmacy to dispense a drug to an eligible patient of the covered entity," *id.* § 43-15.3-08(3)(b)(4).  North Dakota bans AbbVie's claims-data condition, too, stating manufacturers may not "[r]equire a covered entity or contract pharmacy to

3

submit any claims, encounter, or utilization data as a condition for acquiring or receiving a drug[.]" *Id.* § 43-15.3-08(3)(b)(3). Because AbbVie's policy violates H.B. 1473 and the state has not disavowed enforcement, "there exists a credible threat of prosecution" under the North Dakota law. *Driehaus*, 573 U.S. at 160. In fact, that law exists to ban the exact policy AbbVie wants to enforce. *See* Doc. 31-1 at 43-44 ("Drug manufacturers understand what H.B. 1473 does and why the North Dakota legislature enacted it—hence these lawsuits.").

The threat of enforcement leaves AbbVie with two choices, either of which establishes standing. AbbVie could enforce its policy and suffer civil monetary penalties (up to $10,000 a violation)—and criminal penalties—for adhering to its policy. *Minnesota Chapter of Associated Builders & Contractors, Inc. v. Blissenbach*, 155 F.4th 1015, 1021 (8th Cir. 2025) (holding plaintiffs had standing where they "allege[d] several practices that they would like to continue, which the Act arguably proscribes"); *Monson v. DEA*, 589 F.3d 952, 958 (8th Cir. 2009) (letter from the government "plainly state[d]" position in favor of enforcement). Or AbbVie could, as it has done, pause its policy and complete unlimited transfers to contract pharmacies at significant discounts. *See* N.D. Cent. Code §§ 43-15.3-08(3)(b), 43-15.3-09(1)–(2); Doc. 28-18 ¶¶ 22-23, 30-33, 36; *see also Animal Legal Def. Fund v. Vaught*, 8 F.4th 714, 720 (8th Cir. 2021) ("A plaintiff need not expose itself to liability in order to show an injury in fact."). By pausing its policy, AbbVie continues to suffer substantial harm. Ex. 1 (Supp. Scheidler Decl.) ¶¶ 8-9. Before AbbVie adopted its contract pharmacy policy, on average AbbVie was making approximately 1,250 340B sales a month. *Id.* ¶ 8. After AbbVie enacted its policy, the average number of 340B discounted sales went down to around 1,000 a month. *Id.* Finally, after AbbVie stopped enforcing its policy because of H.B. 1473, the average number of discounted sales increased to over 1,500 a month. *Id.* These additional discounted sales have cost AbbVie an estimated $10 million through the end

of 2025 and are estimated to cost another $35 million in 2026.  *Id*. ¶ 9.  These harms will only accumulate, since the state has refused to disavow enforcement.[2]  *See Driehaus*, 573 U.S. at 161 (observing that plaintiffs have justiciable claims when a government entity "decline[s] to disavow prosecution if the plaintiffs resume[] their" constitutionally protected activity).

Most state officials AbbVie has sued regarding 340B laws, including in this suit, do not dispute AbbVie's standing to challenge their 340B adjuncts.  *See* Doc. 31-1 at 13 (contending the "Court lacks subject-matter jurisdiction" only "over [the] ***portion*** of [AbbVie's] claims[] relating to the Rebate Model Pilot Program").  They refrain for good reason:  Other courts to consider AbbVie's challenges to similar state laws agree that AbbVie has standing to pursue its claims.  The *Frey* court, for example, concluded that the manufacturers intended "to follow their policies restricting delivery to contract pharmacies" and that doing so "would likely result in state sanctions, as the State has not represented that it would not enforce the Maine statute … if Plaintiffs followed their policies."  *Novartis Pharms. Corp. v. Frey*, 2025 WL 2813787, at *6 (D. Me. Sept. 23, 2025).  That was sufficient to demonstrate manufacturers' standing.  The same is true here, where the State agrees H.B. 1473 forbids AbbVie's policy and refuses to disavow enforcement.  *See* Doc. 31-1 at 43-44.  So too with *Skrmetti*, a case in which AbbVie challenged Tennessee's 340B adjunct.  There, the court concluded that AbbVie's "anticipated conduct [was] clearly proscribed by statute" in Tennessee, meaning AbbVie had standing to challenge the law.  *AbbVie Inc. v. Skrmetti*, 2025 WL 1805271, at *9 (M.D. Tenn. June 30, 2025).  The *Skrmetti* court noted that "the lack of enforcement warning letters" had "little bearing, given that the plaintiffs filed suit

---

[2] The State purportedly disavowed enforcement with respect to the now-suspended Rebate Program.  Doc. 31-1 at 27. But the promise was exceedingly narrow.  The State observed that, so long as AbbVie's conduct did not violate the State's understanding of H.B. 1473, it would not enforce the law against the Rebate Program.  *See* Doc. 31-2 ¶¶ 7-11; Doc. 31-3 ¶¶ 10-15.  This representation, far from assuaging AbbVie's concerns, suggests that the State ***does*** intend to enforce H.B. 1473 against the other aspects of AbbVie's policy.

the day after [the Tennessee] Governor … signed the Act." *Id.* The same conclusion follows here, where AbbVie sued just days after H.B. 1473 was signed and months before its effective date. Doc. 1.

Against these cases, *Bailey* is an outlier without persuasive value. *AbbVie Inc. v. Bailey*, 2025 WL 1918948 (E.D. Mo. July 11, 2025); *see United States v. Missouri*, 114 F.4th 980, 985 (8th Cir. 2024) (stating Missouri's "argument confuses standing with the merits of the dispute"). When states ban contract pharmacy policies, they force manufacturers to sell more steeply discounted drugs. *See* Doc. 28-18 ¶¶ 30-33. They also extinguish a right reserved to manufacturers by Congress. *See Novartis Pharms. Corp. v. Johnson*, 102 F.4th 452, 460, 463–64 (D.C. Cir. 2024). So even if a state law turns out to be compatible with the federal scheme—North Dakota's law is not—AbbVie may litigate that question. *See Missouri*, 114 F.4th at 985. *Bailey* confused the merits with jurisdiction and resolved both questions at the same time. But this Court should conclude, as even the *Frey* and *Skrmetti* courts have concluded, that AbbVie has standing to pursue its claims and that the Court has jurisdiction to reach the merits of those claims.

## II.    H.B. 1473's Unconstitutional Operation In North Dakota.

H.B. 1473 has the same unconstitutional operation in North Dakota as similar laws do in other states. Evidence specific to North Dakota confirms this.

*First*, AbbVie's contract-pharmacy policy does not operate differently based on a pharmacy's size or ownership. So H.B. 1473's ban on that policy operates in the same unconstitutional fashion—regardless of the size or ownership of any particular pharmacy. Whether it be a White Drug location or a national chain, the effect of AbbVie's policy is to limit 340B sales to one designated pharmacy per covered entity. And the effect of H.B. 1473 is to ban that policy, thereby compelling additional (and unlimited) 340B sales to all of a covered entity's contract pharmacies. *See* Doc. 28-18 ¶¶ 5-7.

6

In that way, neither AbbVie's factual claims nor its constitutional claims change based on the differences between large and small pharmacies, or chain and independent pharmacies. When pharmacies (chain or independent) contract with covered entities, they obtain access to 340B pricing. When H.B. 1473 compels AbbVie to hand over its products at a confiscatory price to hospitals and pharmacies in North Dakota, it (1) interferes with and burdens the 340B Program and (2) effects an illicit Fifth Amendment taking. So North Dakota's Pharmacy Ownership Law, N.D. Cent. Code § 43-15-35, does not affect AbbVie's constitutional challenges to H.B. 1473.

***Second***, North Dakota covered entities commonly contract with out-of-state pharmacies, including national chains who certainly deploy typical 340B systems (i.e., they take title to 340B drugs and do not maintain agency relationships with covered entities). They include chains with no physical presence in North Dakota, like Walgreens. Consider for example Sanford Medical Center's hospitals in Bismarck and Fargo, covered entities that have contracted with pharmacies spanning several states. Ex. 1 ¶ 15. Those pharmacies include chains like Walmart, CVS, and Walgreens. *Id.*; *see also* Doc. 31-8 §§ 3.3.5 (explaining that "title shall pass to Walgreens" upon receipt), 8.10 (explaining that Walgreens remains an independent contractor, not an agent, of covered entities). Sanford's out-of-state contract pharmacy relationships are significant: 91 total contract pharmacy relationships (50 out-of-state) for the Bismarck hospital, and 152 total (106 out-of-state) for the Fargo hospital. Ex. 1 ¶ 15. Trinity Health in Minot is another example. It maintains 7 contract pharmacy relationships, including pharmacies in Tennessee, Arizona, and Indiana. *See id.* ¶ 16. This practice is not unique to Sanford and Trinity. Thus, when AbbVie implemented its contract-pharmacy policy in North Dakota, the number of orders of 340B-priced drugs in North Dakota fell by approximately 2,400 per year. *See id.* ¶ 8. Conversely, now that

7

H.B. 1473 has banned AbbVie's policy in North Dakota, 340B-priced orders are on track to increase by roughly 6,000 over the year. *Id.*

*Third*, North Dakota does not dispute that contract pharmacies that will benefit from H.B. 1473 take title to 340B-priced drugs without operating as agents of covered entities. AbbVie argued those two points in its motion for, and reply in support of, summary judgment. Doc. 29 at 11, 28-29; Doc. 48 at 3. The State did not disagree, preferring to contend that title and agency are beside the point. *See* Doc. 31-1 at 31 (stating "[t]he particulars of title and agency" are irrelevant); Doc. 52 at 7. Amici, which include the American Hospital Association, also did not dispute that contract pharmacies take title and are not agents of covered entities but instead also argued that this is irrelevant, claiming that "whether title transfers … or the contract pharmacy is an agent" is "a distraction" and "ultimately immaterial." Doc. 47 at 3. But the State cannot brush aside title and agency. As AbbVie explained, "*McClain*'s assumptions do not hold in this case, where contract pharmacies place orders for drugs, receive those drugs, and then retain title to them." Doc. 29 at 29. The undisputed facts reflect that contract pharmacies in North Dakota are not agents of covered entities and that they take title to 340B drugs. In that factual context, H.B. 1473 is only cognizable as a price regulation that does not meaningfully govern delivery. *See* Doc. 48 at 15-16 ("The only question is the price at which the pharmacy acquires the drug.").

*Fourth*, the State also agreed that the replenishment model is used in North Dakota. *See* Doc. 31-1 at 8-9, 31; Doc. 52 at 7-8. Once again, the State preferred to argue that the replenishment model was irrelevant on the theory *McClain* did not acknowledge the replenishment model. But *McClain*'s failure to consider the replenishment model makes *it*, not the relevant facts, inapplicable. The State's additional concession confirms—as a practical matter—that covered entities in North Dakota do not maintain title to 340B-discounted drugs. After all, under the

8

replenishment model, contract pharmacies do not maintain a separate inventory of 340B-priced drugs.  Doc. 29 at 37.  Those drugs enter a pharmacy's general inventory, from which they may be dispensed to any patient, undermining any suggestion the covered entity maintained title to them.  *See id.*

*Finally*, AbbVie has other North Dakota-specific evidence it suffered harm after H.B. 1473's enactment.  As noted above, AbbVie has already seen $10 million in harm in North Dakota from H.B. 1473 and expects to see tens of millions more.  Until the enforcement of H.B. 1473 is enjoined as against AbbVie, AbbVie will continue to face a choice between tens of millions of dollars in unconstitutionally imposed compliance costs and civil or criminal liability under North Dakota's law.  Those injuries, which AbbVie has traced to North Dakota and its law, give the Court jurisdiction to consider the merits of AbbVie's request.  *Driehaus*, 573 U.S. at 158.

Dated: March 23, 2026                      Respectfully submitted,

                                           */s/ Matthew S. Owen, P.C.*
                                           Matthew S. Owen, P.C.
                                           K. Ross Powell
                                           Meredith M. Pohl
                                           KIRKLAND & ELLIS LLP
                                           1301 Pennsylvania Avenue N.W.
                                           Washington, D.C. 20004
                                           Telephone: (202) 389-5000
                                           Email: matt.owen@kirkland.com
                                                   ross.powell@kirkland.com
                                                   meredith.pohl@kirkland.com

                                           Benjamin J. Sand
                                           CROWLEY FLECK PLLP
                                           100 West Broadway, Suite 250
                                           Bismarck, ND 58501
                                           Telephone: (701) 223-6585
                                           Email: bsand@crowleyfleck.com