**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| ABBVIE INC. ET AL.,<br><br>*Plaintiffs*,<br><br>v.<br><br>DREW H. WRIGLEY, in his official capacity as Attorney General of North Dakota, et al.,<br><br>*Defendants*. | No. 1:25-cv-00081 |
| ASTRAZENECA PHARMACEUTICALS LP,<br><br>*Plaintiff*,<br><br>v.<br><br>DREW H. WRIGLEY, in his official capacity as Attorney General of North Dakota, et al.<br><br>*Defendants*. | No. 1:25-cv-00182 |
| PHARMACEUTICAL RESEARCH AND MANUFACTURERS OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>DREW H. WRIGLEY, in his official capacity as Attorney General of North Dakota, et al.,<br><br>*Defendants*. | No. 1:25-cv-00204 |

**<u>PHRMA's RESPONSE TO DEFENDANTS' RESPONSE TO</u>**
**<u>ABBVIE'S NOTICE OF SUPPLEMENTAL AUTHORITY</u>**

The United States of America recently filed amicus briefs supporting the plaintiffs in challenges brought to state laws that are materially similar to North Dakota's. *See* AbbVie's Notice of Supplemental Authority, No.25-cv-81.Dkt.67 at 1-2. The United States argued among other things that the Supremacy Clause itself displaces state 340B laws under the intergovernmental-immunity doctrine. *See generally* No.25-cv-81.Dkt.67-1. After AbbVie brought that development to this Court's attention, North Dakota responded that "no Plaintiff in these actions actually pleaded a claim that H.B. 1473 violates the intergovernmental immunity doctrine, nor have any of them alleged facts that would support such a claim," and insisted that "[t]he first time that such arguments appeared in this litigation was when PhRMA (and AbbVie, to an extent) asserted them in their Summary Judgment Response/Reply briefs." Defendants' Response to AbbVie's Notice of Supplemental Authority, No.25-cv-81.Dkt.68 at 2. That is doubly wrong. PhRMA pleaded a claim under the Supremacy Clause and it raised that argument at every opportunity. The issue is properly before this Court.

To begin, the State's position that PhRMA did not raise its intergovernmental immunity argument under the Supremacy Clause until its response/reply brief is meritless. PhRMA's opening brief fully and fairly presents that issue:

- PhRMA argued that "States cannot modify, add to, or interfere with … federal agreements in a way that impairs a federal function because conditions on participation in Spending Power programs must be explicit at the outset and cannot be changed unless clearly and unambiguously authorized by Congress." No.25-cv-204.Dkt.16 at 5 ("PhRMA.MSJ"). It then cited a case from the Third Circuit that "collect[ed] cases on intergovernmental immunity" to support that proposition. *Id.*

- PhRMA devoted an entire section of its opening brief to the argument that North Dakota's efforts to regulate a federal spending program violates the Supremacy Clause and the intergovernmental immunity doctrine, PhRMA.MSJ at 22-26, separate and apart from "traditional" field and conflict preemption principles, *see id.* at 26. That section of PhRMA's brief argued at length about why "this case" can be "resolve[d]" through "established principles of intergovernmental immunity," which prohibit a state from

"directly regulat[ing] the activities of the federal government" or discriminating against "the United States or those with whom it deals." *Id*. 24-25.

- PhRMA explicitly argued that H.B. 1473 "single[s] out those contracted with the federal government for special obligations that do not apply to those who do not participate in federal programs," and unlawfully "impose[s] obligations on federal agencies." *Id.* at 26.

The State's insistence that PhRMA did not fairly present its intergovernmental immunity arguments until its response/reply brief is thus wholly unsupported. And even if the State were right, the issue is still fairly presented because PhRMA raised it in its opposition to North Dakota's motion for summary judgment. The State has had a full and fair opportunity to brief this issue.

PhRMA was fully within its rights to argue intergovernmental immunity because the complaint contains sufficient allegations to put the State on notice of PhRMA's claim that H.B. 1473 violates the Supremacy Clause. "The well-pleaded facts alleged in the complaint, not the legal theories of recovery or legal conclusions identified therein, must be viewed to determine whether the pleading party provided the necessary notice and thereby stated a claim in the manner contemplated by the federal rules." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014). That is why the allegations in a complaint need not "support the particular *legal theory* [a plaintiff] advances, for the court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory." *Id.* at 849 (emphasis added). And here, PhRMA's allegations provided ample notice of its claim under the Supremacy Clause, which is the constitutional provision from which the intergovernmental immunity doctrine derives. *See United States v. California*, 921 F.3d 865, 878 (9th Cir. 2019). PhRMA alleged that H.B. 1473's obligations apply solely to those manufacturers that have "a preexisting federal obligation"—*i.e.*, those that have entered into federal contracts to offer drugs at reduced prices. No.25-cv-204.Dkt.1-1 ("Compl.") ¶¶135, 169-71, 174-75. H.B. 1473 unlawfully "seeks to impose its own obligations on any manufacturer that agreed to accept federal funds" and effectively "rewrite[s] private parties'

2

contracts with the federal government" by forcing manufacturers to provide 340B pricing in circumstances that federal law neither contemplates nor requires. *See id.* ¶¶174-75, 180. PhRMA relied on those allegations to claim that H.B. 1473 is invalid "[u]nder the Supremacy Clause of the U.S. Constitution," Compl. ¶¶169-73; *see id.* at ¶2 (alleging H.B. 1473 is "preempted under the Supremacy Clause to the U.S. Constitution"), and made clear that this theory was independent from the other "ordinary" preemption claims it also brought, *see id.* ¶¶31-32.

On the merits, the State's argument that the intergovernmental immunity doctrine "has no application to H.B. 1473" cannot be squared with the law or the facts. North Dakota does not dispute the factual reality that H.B. 1473's obligations apply exclusively to drug manufacturers that have entered into contracts with the federal government to advance federal objectives. The State tries to excuse that discrimination against those with whom the federal government deals by arguing that federal law does not *require* manufacturers to impose contract-pharmacy and claims-data conditions, and thus the manufacturers can be regulated by the State because they are not imposing those conditions on behalf of the federal government. No.25-cv-81.Dkt.68 at 5. But that argument would collapse the distinction between intergovernmental immunity and traditional preemption analysis; if a federal statute requires manufacturers to take a certain action, a state law forbidding manufacturers from taking that action is preempted by the statute. Intergovernmental immunity applies where (as here) a statute gives a manufacturer discretion to engage in a course of conduct, and the state has forbidden manufacturers that contract with the federal government— and *only* manufacturers that contract with the federal government—to exercise that discretion.

North Dakota's claim that H.B. 1473 does not "regulate the federal government or contractors acting at the direction of the federal government" is similarly misplaced. No.25-cv-81.Dkt.68 at 5. For starters, the federal government disagrees with the state's view that

3

manufacturers are not acting at the direction of the federal government. *See* No.25-cv-81.Dkt.67-1 at 20-23. Also, manufacturers that participate in the 340B Program do so in order to have their drugs eligible for federal reimbursement under Medicaid and Medicare. *See Novartis Pharms. Corp. v. Johnson*, 102 F.4th 452, 455 (D.C. Cir. 2024). In exchange, those manufacturers agree to offer drugs at statutorily capped prices in order to advance the federal interest in providing reduced-price drugs to safety-net healthcare providers. The conditions that manufacturers impose on those offers are part and parcel of their (contractually obligated) participation in the 340B Program.

Finally, the State is wrong to suggest that PhRMA's intergovernmental immunity arguments are "at odds with the holding of *McClain*." No.25-cv-81.Dkt.68 at 6. The Eighth Circuit's decision in *McClain* neither considered nor decided whether the law at issue violated the intergovernmental immunity doctrine. For that reason, *McClain* does not foreclose PhRMA's argument. *See Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."); *Sanzone v. Mercy Health*, 954 F.3d 1031, 1039 (8th Cir. 2020) ("[W]hen an issue is not squarely addressed in prior case law, we are not bound by precedent through *stare decisis*." (quoting *Passmore v. Astrue*, 533 F.3d 658, 660 (8th Cir. 2008))).

Respectfully submitted,

/s/ Erin E. Murphy

Ryan C. McCamy, ND ID #06420
Conmy Feste Ltd.
3369 45th Street
South Fargo, ND 58104
Telephone: (701) 293-9911
rmccamy@conmylaw.com

ERIN E. MURPHY*
MATTHEW D. ROWEN*
PHILIP HAMMERSLEY*
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
erin.murphy@clementmurphy.com

4

matthew.rowen@clementmurphy.com
philip.hammersley@clementmurphy.com

\* admitted pro hac vice

*Counsel for PhRMA*

March 25, 2026

5