**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA**

ABBVIE INC. (a Delaware corporation);
ALLERGAN, INC. (a Delaware corporation);
DURATA THERAPEUTICS, INC. (a
Delaware corporation); ABBVIE PRODUCTS
LLC (a Georgia limited liability company);
PHARMACYCLICS LLC (a Delaware limited
liability company); and ALLERGAN SALES,
LLC (a Delaware limited liability company),

        *Plaintiffs*,

    v.

DREW H. WRIGLEY, in his official capacity
as ATTORNEY GENERAL OF THE STATE
OF NORTH DAKOTA,

and

TANYA L. SCHMIDT, in her official capacity
as BOARD PRESIDENT OF THE NORTH
DAKOTA BOARD OF PHARMACY; and
CAROLYN BODELL, TYLER G.
LANNOYE, SHANE R. WENDEL, KEVIN J.
OBERLANDER, DIANE HALVORSON, and
RON HORNER, in their official capacities as
MEMBERS OF THE NORTH DAKOTA
BOARD OF PHARMACY; and MARK J.
HARDY, in his official capacity as
EXECUTIVE DIRECTOR OF THE NORTH
DAKOTA BOARD OF PHARMACY,

        *Defendants*.

Case No. 1:25-cv-00081

**ABBVIE'S NOTICE OF SUPPLEMENTAL AUTHORITY**

April 2, 2026

AbbVie submits this notice of supplemental authority regarding the Fourth Circuit's opinion affirming an injunction against West Virginia's H.B. 1473 analog. Ex. 1 (*PhRMA v. McCuskey*, --- F.4th ---, 2026 WL 898259 (4th Cir. 2026)). The Fourth Circuit held that laws like H.B. 1473 are preempted by the federal 340B Program because such laws "attach[] obligations solely to entities that accept a spending-power bargain," thereby "interfer[ing] … with Congress's exercise of its spending power and … with HHS's enforcement authority and specific enforcement activities." Ex. 1 at 30. In reaching that correct conclusion, the Fourth Circuit confirmed AbbVie's arguments in this case.

***First***, the Fourth Circuit explained that laws like H.B. 1473 impermissibly target federal creations and federal actors, which not only negates the presumption against preemption but renders the state laws preempted. *Id.* at 17-22; Doc. 29 at 17-27. Laws like H.B. 1473 "spring[] obligations on manufacturers specifically by virtue of their participation in a federal program," applying only to "those manufacturers that have effectively contracted with the federal government. Ex. 1 at 19; *see* Doc. 48 at 4-7. Such laws are "anything but … traditional health-and-safety regulation[s]." Ex. 1 at 19; *see* Doc. 48 at 4-7. They "inject[] the State[s] into the 'relationship between a federal agency and the entity it regulates,' which is 'inherently federal in character because the relationship originates from, is governed by, and terminates according to federal law." Ex. 1 at 19 (citing *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 347 (2001)); *see* Doc. 29 at 32-33; Doc. 48 at 4-7. The Fourth Circuit acknowledged that "[a]t a high level of generality" such laws sound like they "regulate[] the pharmaceutical industry." Ex. 1 at 19. But "the fact that pharmacies stand to receive deliveries of drugs paid for by covered entities under this law does not transform pharmacies, drugs, or healthcare providers into the law's targets." *Id.* On this ground, the Fourth Circuit also rejected the price-delivery distinction that

1

States, like North Dakota, routinely invoke.  The price-delivery distinction "fails to appreciate that the state laws do not address drug distribution generally but explicitly single out *340B* and set distribution rules for participating manufacturers alone."  Ex. 1 at 31 n.12.

*Second*, the Fourth Circuit agreed that "[t]he result" of laws like H.B. 1473 "is that more drugs will be sold at bargain prices."  *Id.* at 5; *see* Doc. 29 at 31; Doc. 48 at 17-19.  These laws require manufacturers to transfer discounted drugs to an unlimited number of contract pharmacies, but "[c]ourts have already made clear that Congress *did not* require manufacturers to distribute drugs to an unlimited number of contract pharmacies as part of the 340B program."  Ex. 1 at 25 (citation omitted); *see* Doc. 29 at 33-34; Doc. 48 at 20.  Laws like H.B. 1473 thus place a thumb on the scale in favor of covered entities and contract pharmacies, "alter[ing] the 340B program's fundamental bargain" of access to Medicaid and Medicare Part B in exchange for *offering* discounted drugs to covered entities.  Ex. 1 at 25; *see* Doc. 29 at 32-35; Doc. 48 at 7, 19-21.  Put differently, States like North Dakota "seek[] to add [new] downsides" to the 340B bargain "without offering any additional upside to compensate."[1]  Ex. 1 at 25.

*Third*, the Fourth Circuit rightly concluded that laws like H.B. 1473 "intrude[] on HHS's enforcement authority."  *Id.* at 28.  The Court explained that HHS "oversees overcharge claims 'that a manufacturer has limited [a] covered entity's *ability to purchase* covered outpatient drugs at or below the 340B ceiling price.'"  *Id.* at 29 (quoting 42 C.F.R § 10.21(a)(1)).  Overcharge

---

[1]   Although the Fourth Circuit did not reach a Takings Clause claim, its conclusions that state laws result in more discounted sales and do not come with any additional upside confirm AbbVie's arguments here that H.B. 1473 is a forced-sale regulation with no corresponding state-provided benefit.  *See* Doc. 29 at 30-35; Doc. 48 at 17-21.

claims "include unduly restrictive contract pharmacy policies," and "[b]ecause HHS already mediates disputes relating to pharmacy delivery policies, States have no room to create new enforcement schemes in the same arena." *Id.*; *see* Doc. 29 at 18-22; Doc. 48 at 7-10. Likewise, claims-data restrictions, like those in H.B. 1473, "interfere[] with manufacturers' ability to conduct audits, which are necessary to launch the HHS-administered dispute resolution process." Ex. 1 at 29 (citing 42 U.S.C. § 256b(d)(3)); *see* Doc. 29 at 22-24; Doc. 48 at 10-12 (explaining "H.B. 1473 blocks AbbVie from ***initiating*** the audit process").

***Finally***, the Fourth Circuit agreed that manufacturers subject to laws like H.B. 1473 are entitled to injunctive relief. Ex. 1 at 31-34. These state laws subject manufacturers to irrecoverable financial losses in the form of civil penalties (if manufacturers do not comply) or "millions in lost revenue" (if they do comply). Ex. 1 at 32; Doc. 75 ¶ 9 (estimating AbbVie's cost of compliance at $10 million in 2025 and $35 million in 2026). Little offsets those harms on the State's side of the ledger, since "a State is not seriously harmed" by an "injunction that prevents the State from enforcing laws that are likely unconstitutional." *See* Ex. 1 at 33. "And patients—who do not directly enjoy the benefits of the 340B program—should not find their access to the underlying drugs impeded." *Id.* at 33; Doc. 29 at 12 (citing Doc. 28-18 ¶ 4).

This Court should follow the Fourth Circuit's well-reasoned approach, grant AbbVie's motion for summary judgment, and permanently enjoin the enforcement of H.B. 1473.

Dated: April 2, 2026

Respectfully submitted,

By: */s/ Matthew S. Owen*

    Matthew S. Owen, P.C.
    K. Ross Powell
    Meredith M. Pohl
    KIRKLAND & ELLIS LLP
    1301 Pennsylvania Avenue N.W.
    Washington, D.C. 20004
    Telephone: (202) 389-5000
    Email: matt.owen@kirkland.com
          ross.powell@kirkland.com
          meredith.pohl@kirkland.com

    Benjamin J. Sand
    CROWLEY FLECK PLLP
    100 West Broadway, Suite 250
    Bismarck, ND 58501
    Telephone: (701) 223-6585
    Email: bsand@crowleyfleck.com

4